S03G1190. SHERMAN & HEMSTREET, INC. v. CINCINNATI INSURANCE COMPANY.

(594 SE2d 648)

SEARS, Presiding Justice.

Certiorari was granted to consider whether the Court of Appeals correctly construed an insurance policy's provisions governing the limit of insurance applicable to coverage for employee dishonesty. Having reviewed the record in light of certain stipulations concerning the policy made by the parties before the trial court, we determine that the Court of Appeals' decision was correct. Therefore, we affirm.

---

Sherman & Hemstreet, Inc. ("Sherman"), purchased a commercial insurance policy issued by the Cincinnati Insurance Company ("Cincinnati") that provided coverage for, among other things, loss due to employee dishonesty. In their cross motions for summary judgment, the parties stipulated that the insurance policy had a three year term from September 1, 1997, to September 1, 2000, and that the policy was renewed for an additional three year term from September 1, 2000, to September 1, 2003. Otherwise, the parties stipulated, the provisions of the two policies were identical.

The policies provided that in cases of employee dishonesty, the "most [Cincinnati] will pay for loss in any one 'occurrence' is the applicable Limit of Insurance shown in the Declarations." The Declarations, in turn, limited recovery for loss due to employee dishonesty to $50,000. Both policies defined an "occurrence" as "all loss caused by, or involving, one or more employees whether the result of a single act or a series of acts." Thus, for all losses due to the dishonest acts of employees (either a single employee or a group acting in concert), the policies limited Sherman's recovery to $50,000. The policies also included the following non-cumulation clause: "Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period."

Four years after the original policy took effect, Sherman discovered that due to ongoing embezzlement by a single employee, it had sustained losses in each of the three years covered by the original policy and during the first year of the renewed policy. It submitted a claim to Cincinnati seeking to recover $160,670 — $50,000 for each year of the original three-year policy and $10,670 for the first year of the renewed policy. Cincinnati paid Sherman $50,000, explaining that was the extent of Sherman's coverage for employee dishonesty. Sherman demanded the additional $110,670, and sued. The trial court granted Sherman's motion for summary judgment. On appeal, the Court of Appeals affirmed in part and reversed in part,[1] concluding the policies' terms were ambiguous as to whether the renewed policy set a new $50,000 limit independent of the original policy. That ambiguity was construed in favor of the insured, and hence the Court of Appeals affirmed the ruling that Sherman could recover $10,670 under the renewed policy. The Court of Appeals concluded, however, that under the unambiguous terms of the original policy, Sherman's coverage for employee dishonesty was limited to $50,000 for the entire three year period. Therefore, it reversed the trial court's ruling

---

[1] *Cincinnati Ins. Co. v. Sherman & Hemstreet, Inc.*, 260 Ga. App. 870 (581 SE2d 613) (2003).

that Sherman was entitled to recover an additional $100,000 under the original policy. This Court granted Sherman's petition for certiorari.

1. Cincinnati argues that the Court of Appeals erred in requiring it to pay $10,670 to Sherman under the renewed policy, because the non-cumulation clause limited Sherman's recovery to $50,000 "regardless of the number of years [the] insurance remains in force or the number of premiums paid."[2] As noted above, though, Cincinnati stipulated that there were two insurance policies, one of them an original and the other a renewal. We agree with the Court of Appeals that in light of that stipulation, the non-cumulation clause is ambiguous because it could be construed to mean either: (1) that Cincinnati's maximum aggregate liability, regardless of the number of policies that it issued, was limited to $50,000, or (2) that the liability limit for the original policy could not be "carried over" to increase the liability limit for the renewed policy, although both policies indemnified Sherman for up to $50,000. We must construe this ambiguity in favor of the insured,[3] and thus we agree with the Court of Appeals' judgment permitting Sherman to recover $10,670 under the renewed policy.

2. Sherman argues that the original policy was not for a term of three years, but rather was a series of separate, independent contracts, each for a term of one year. Thus, argues Sherman, it is entitled to recover up to the policy's $50,000 limit of liability for each of the three years in which a loss occurred. As noted above, however, Sherman stipulated before the trial court that the original policy was for a term of three years:

> The initial policy had a three (3) year term from September 1, 1997, to September 1, 2000, and the policy was renewed for an additional three (3) year term from September 1, 2000, to September 1, 2003. Otherwise . . . the provisions of the two policies were the same.

The parties are, of course, bound on appeal by the stipulations upon which their case was decided in the trial court.[4] Accordingly, Sherman is estopped from arguing on appeal that the policy was for any-

---

[2] Cincinnati raised this issue in its response to Sherman's petition for certiorari, and asked this Court to grant an appeal in order to consider its argument.

[3] *Claussen v. Aetna Cas. & Surety Co.*, 259 Ga. 333, 334 (380 SE2d 686) (1989).

[4] *Hawes v. Nashville, Chattanooga & St. Louis Ry. Co.*, 223 Ga. 527 (156 SE2d 455) (1967); *Crawford v. Crump*, 223 Ga. App. 119, 122 (476 SE2d 855) (1996); Milich, Georgia Rules of Evidence, § 4.1 (a stipulation estops a party from any position inconsistent therewith); 73 AmJur2d, Stipulations, § 7 (stipulated facts are conclusive on appeal and a party may not argue that the facts are other than as stipulated to in the trial court).

thing other than a single term of three years.[5]

3. The Court of Appeals properly held that Sherman's recovery under the original policy was limited to $50,000. As with any contract, the terms of an insurance policy bear their usual and common meanings.[6] In construing an insurance policy, we strive for the construction that will uphold the policy both as a whole and in every part.[7] In construing any part of a contract for insurance, the contract as a whole must be taken into consideration.[8]

As discussed above, the original policy was for a term of three years. The policy unambiguously stated that for that three year period, the most Cincinnati would pay for losses due to employee dishonesty was $50,000 per "occurrence." The policy defined an "occurrence" as "all loss caused by, or involving, one or more employees, whether the result of a single act or a series of acts." The employee dishonesty at issue in this case was a series of embezzlements committed by a single employee over the course of several years. Thus, the loss for which Sherman sought indemnification under the original policy fell within the policy's definition of a single "occurrence." By its plain terms, the three year policy capped Sherman's coverage at $50,000 for this single occurrence.

4. The original policy's non-cumulation clause also limits Sherman's recovery to $50,000. That clause states that: "Regardless of the number of years [the] insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period." Sherman claims the clause was intended to prevent the insured from seeking to carry forward unused portions of insurance from one year to the next. Thus, argues Sherman by way of example, if an insured lost $150,000 in the policy's third year due to employee dishonesty, the non-cumulation clause would prevent it from seeking to recover its entire loss by carrying forward $50,000 in unused coverage from both the first and second year of the policy.

Sherman's argument, however, is based upon the erroneous assumption that there was a separate $50,000 coverage limit for each year the policy was in place. In Divisions 2 and 3, supra, we have already rejected that same proposition. As discussed above, without considering the non-cumulation clause at all, the rest of the policy

---

[5] We note that the second page of both policies also clearly states that they both are for terms of three years. For this reason, the line of cases relied upon by Sherman — in which several courts have construed similar multi-year policies as being composed of separate contracts for a term of one year each — have no application to this appeal. See, e.g., *ABS Clothing Collection v. Home Ins. Co.*, 41 Cal.Rptr.2d 166 (1995).

[6] See *Jefferson Pilot Life Ins. Co. v. Clark*, 202 Ga. App. 385 (414 SE2d 521) (1991); OCGA § 13-2-2 (2).

[7] See OCGA § 13-2-2 (4).

[8] See OCGA § 13-2-2 (5).

unambiguously allows recovery of only one limit of insurance. There is no annual limit for employee dishonesty, as urged by Cincinnati.

As noted above, the non-cumulation clause must be construed consistently with the remainder of the policy.[9] Hence, we read the clause as unambiguously stating that payment of the premiums on an annual basis does not increase the single limit of insurance, regardless of whether the policy was written for a term of more than one year. Therefore, if (for example) Sherman had paid premiums for its three year policy on an annual basis, it could not argue that it necessarily follows there was an annual $50,000 limit of coverage.[10] The non-cumulation clause plainly foreclosed·any claim that the scope of coverage was tied to the schedule of premium payments or the length of the policy.

Moreover, the very terms of the non-cumulation clause are inconsistent with Sherman's argument regarding how that clause should be construed. The clause provides that *regardless of the number of years* the policy stays in force, the $50,000 per occurrence limit of insurance shall not cumulate, i.e.: shall not accumulate.[11] In other words, the policy provided for only one coverage limit "per occurrence" — $50,000.[12]

5. Sherman argues that it paid an annual premium and it should not be denied annual coverage. In essence, Sherman argues, it received nothing in exchange for its payment of annual premiums. However, we note that where the policy intended for insurance limits to apply on an annual basis, it said so explicitly. For example, the policy's provisions for general commercial liability coverage state that the insurance limits for that particular coverage apply "separately to each consecutive annual period and to any remaining period of less than twelve months." Additionally, the policy's provisions for real estate agent error coverage state that if that particular coverage is in effect for more than one year, the insurance limits apply "separately

---

[9] OCGA § 13-2-2 (4), (5).

[10] The record shows that the policy actually provided for Sherman's premium payments to be made on a quarterly basis.

[11] The American Heritage Dictionary of the English Language, p. 455 (Houghton Mifflin 1992).

[12] A number of other courts have held that an insured in Sherman's position may not rely upon the non-cumulation clause at issue when seeking to recover multiple limits where only one limit is set out in the relevant insurance policy. See, e.g., *Shared Interest Mgmt. v. CNA Financial Ins. Group*, 725 NYS2d 469 (N.Y. App. Div. 2001); *Reliance Ins. Co. v. Treasure Coast Travel Agency*, 660 S2d 1136 (Fla. App. 1995); *Diamond Transport System v. The Travelers Indemn. Co.*, 817 FSupp. 710, 712 (ND Ill. 1993). While several other courts have ruled differently, many of their opinions addressed policies with terms that are markedly different from those at issue here. See, e.g., *Columbia Heights Motors v. Allstate Ins. Co.*, 275 NW2d 32, 34 (Minn. 1979) (in which the policy expressly stated that any limits of the insurer's liability described therein as being "aggregate" were intended to apply "separately to each consecutive annual period.").

to each consecutive annual period, and to any remaining period of less than twelve months."

In contrast to these forms of coverage, though, the policy states that for employee dishonesty coverage, Cincinnati will pay no more than $50,000 per occurrence. Obviously, if the parties had intended for the $50,000 limit to apply separately to each year the policy was in place, they would have expressly provided for it, as they did with regard to coverage for general commercial liability and real estate agent errors.

*Judgment affirmed. All the Justices concur, except Hunstein and Thompson, JJ., who dissent.*

HUNSTEIN, Justice, dissenting.

Contrary to the majority's opinion, Sherman & Hemstreet, Inc. (S&H) does not argue that the insurance policy in issue here was a series of separate one-year contracts. S&H has consistently stated before the Court of Appeals, in its petition for certiorari and in its brief in this Court that the insurance policy here was for a three-year term. Rather, S&H argues that due to ambiguous language in the policy, it is entitled to recover the $50,000 "employee dishonesty" coverage amount for each year of the three-year policy term. Because I agree with S&H that an ambiguity exists and because Georgia law requires that such ambiguities be construed in favor of the insured, *Ryan v. State Farm Mut. Auto. Ins. Co.*, 261 Ga. 869 (413 SE2d 705) (1992), I respectfully dissent.

The non-cumulation clause at issue in this appeal has been the subject of considerable analysis by our sister courts over the past twenty-five years. See, e.g., *Columbia Heights Motors v. Allstate Ins. Co.*, 275 NW2d 32 (Minn. 1979). While most of the cases involved a series of one-year policies, a handful have addressed the situation present here, where one policy covered a multi-year period. See *Cincinnati Ins. Co. v. Hopkins Sporting Goods*, 522 NW2d 837 (Iowa 1994); *Columbia Heights Motors*, supra. In *Cincinnati Ins. Co.*, the Supreme Court of Iowa addressed whether the three-year policy issued by Cincinnati Insurance Company to its insured, with $15,000 coverage for employee dishonesty, "provided separate $15,000 protections for each of the three years of the policy, or was limited to a total of $15,000 for the entire three-year period." Id. at 838. In that case, as in this one, Cincinnati Insurance Company had a non-cumulation clause that barred accumulating the limits of liability from year to year or period to period regardless of the number of years the policy continued in force.[13] The Supreme Court of Iowa held that

---

[13] "Regardless of the number of years this endorsement shall continue in force and the number of premiums which shall be payable or paid, the Company's total limit of liability

> [a]lthough Cincinnati claims otherwise, we think there is an ambiguity by reason of the policy's non-accumulation clause. That clause, especially the word "cumulatively," can be interpreted as supporting the position either of Cincinnati or [the insured]. Case authority supports both interpretations. Indeed courts have found similar or identical clauses: (1) unambiguous in supporting the position of Cincinnati, [cits.]; (2) unambiguous in supporting the position of [the insured], [cits.]; and, finally, (3) ambiguous. [Cits.]

Id. at 839-840. The Iowa Supreme Court found the language to be ambiguous and ruled against Cincinnati in 1994. Rather than clarifying this litigious phrasing or eliminating it altogether in favor of language that insureds would have no difficulty understanding, Cincinnati retained the "cumulative" language in the policy it issued S&H in 1997. This litigation now results with yet another insured asserting claims based on this contested contractual language the insurer chose to use.

As the Supreme Court of Iowa carefully noted, an ambiguity in an insurance policy does not "necessarily appear[ ] merely because case authority can be found to support divergent interpretation of a policy's wording." Id. at 840. However, based on my review of the policy as a whole, the non-cumulation provision specifically, and the analyses employed by other courts in reviewing similar policies, I cannot agree with the majority's conclusory statement that Cincinnati's non-cumulation provision is unambiguous. Accordingly, I would affirm the trial court's grant of summary judgment in favor of S&H.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED MARCH 29, 2004 —
RECONSIDERATION DENIED APRIL 13, 2004.

*Warlick, Tritt, Stebbins & Hall, William B. Warlick*, for appellant.

*Howard, Clark & Mercer, Glen W. Clark, Jr.*, for appellee.

*Powell, Goldstein, Frazer & Murphy, Linda G. Birchall*, amicus curiae.

---

shall not be cumulative from year to year or period to period." Id. at 838.